**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ASSA ABLOY Global Solutions, Inc., ) | |
| ) | |
| Plaintiff, ) | Case No. _____ |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| LIBERTY ACCESS TECHNOLOGIES ) | |
| LICENSING LLC, ) | |
| ) | |
| Defendant. ) | |

## **COMPLAINT**

Plaintiff ASSA ABLOY Global Solutions, Inc., by and through its undersigned counsel,

files this Complaint and Jury Demand against Liberty Access Technologies Licensing LLC, and

alleges as follows:

### **NATURE OF THE ACTION**

1.      This is an action for declaratory judgment of noninfringement of a United States

Patent pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the Patent Laws

of the United States, 35 U.S.C. §§ 1 *et seq.*

2.      Plaintiff seeks declaratory judgment that none of the claims of U.S. Patent Nos.

9,373,205 (the "'205 Patent"), 10,657,747 (the "'747 Patent"), and 11,373,474 (the "'474

Patent") (collectively, "the Patents"), are infringed by certain software, hardware, and

functionality implemented by Plaintiff for mobile access to hotel rooms.

3.      Plaintiff seeks this relief because Defendant has sued corporate entities related to

Plaintiff as well as Plaintiff's customer in separate lawsuits in the Eastern District of Texas

alleging that those entities have infringed the Patents by owning, operating, advertising,

controlling, selling, and/or offering for sale software, hardware, and functionality for mobile access to hotel rooms. However, the corporate entities related to Plaintiff that Defendant sued in the Eastern District of Texas are not responsible for the allegedly infringing actions in the United States. Defendant's separate lawsuits in the Eastern District of Texas against related entities and Plaintiff's customer have placed a cloud over Plaintiff's continuing hospitality business, thereby creating an actual and justiciable controversy between Plaintiff and Defendant.

## THE PARTIES

4.      Plaintiff ASSA ABLOY Global Solutions, Inc. ("AAGS" or "Plaintiff") is a corporation organized and existing under the laws of Texas, and maintains its principal place of business at 631 International Parkway STE 100, Richardson, TX 75081.

5.      On information and belief, Defendant Liberty Access Technologies Licensing LLC ("Defendant" or "Liberty") is a limited liability company organized and existing under the laws of Texas, and having a principal place of business at 815 Brazos Street, Suite 500, Austin, Texas 78701 (Travis County).

## JURISDICTION AND VENUE

6.      The Court has subject matter jurisdiction over this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; 28 U.S.C. §§ 1331 and 1338; and the Patent Laws of the United States, 35 U.S.C. §§ 1 et seq.

7.      The Court has personal jurisdiction over Defendant because Defendant is a U.S. resident and citizen that has "purposefully directed its activities at residents of the forum." *See Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1295 (Fed. Cir. 2009). Defendant previously filed suit against multiple defendants (not including Plaintiff) in the United States District Court for the Northern District of Illinois in 2018, alleging

2

infringement of the '205 Patent and U.S. Patent No. 9,911,258 (the "'258 Patent") (Civil Action No. NDIL-1-18-cv-03627). The '205, '258, '747, and '474 patents are part of the same patent family, all directly related through continuation applications, generally cover the same subject matter, and share a common specification and inventors. Accordingly, by availing itself of the Northern District of Illinois to assert the patent rights at issue in this case, Defendant has "engaged in activities related to enforcement or defense of the patent within the forum," making the exercise of specific jurisdiction proper. *See Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, 552 F. 3d 1324, 1334 (Fed. Cir. 2008) ("[W]e have consistently required the defendant to have engaged in "other activities" that relate to the enforcement or the defense of the validity of the relevant patents. Examples of these "other activities" include initiating judicial or extra-judicial patent enforcement within the forum[.]"); *see also TORRENT PHARMACEUTICALS LTD v. DAIICHI SANKYO*, 196 F. Supp. 3d 871, 879 (N.D. Ill. 2016) ("[I]n the case of a declaratory judgment action where a plaintiff is asserting a claim of non-infringement against the patentee, the defendant's activities that give rise to or are related to the suit are those concerning the enforcement or the defense of the validity of the patent at issue. In such cases, therefore, the defendant patentee's commercialization activity in the forum is not relevant to enforcement or defense of the patent. Thus, in declaratory judgment actions against patentees, the Federal Circuit has consistently required the defendant to have engaged in activities related to enforcement or defense of the patent within the forum for the exercise of specific jurisdiction to be proper.") (internal citations omitted).

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because, for the purpose of the venue statue, an entity is deemed to reside in any judicial district in which such defendant is subject to the court's personal jurisdiction.

3

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because this is the district in which a substantial part of the events and allegations giving rise to the claims occurred. *See supra,* ¶7.

## BACKGROUND

10.      AAGS is a global leader in the hospitality security industry, and has been for nearly 40 years since its founding in 1974, when lock maker Tor Sørnes came up with the idea for safer door opening systems after hearing about a woman who was attacked in her hotel room. Two years later, Sørnes and AAGS (formerly ASSA ABLOY Hospitality Inc., which was originally VingCard Elsafe) introduced VingCard, the world's first recordable keycard door lock. AAGS's VingCard line of products is still sold today throughout the United States, including to customers and hotels in this District, and the VingCard Classic Electronic Locks, VingCard Essence Electronic Locks, Visionline, and Vostio Access Management products and services continue to make the hospitality industry safer and more secure for patrons. AAGS and its engineers have continuously pioneered, developed, innovated, and patented technology in all aspects of the hospitality security industry.

11.      Many travelers are familiar with AAGS's convenient, easy-to-use, and innovative systems and products that enable mobile access to hotel rooms. The core functionality of the systems and products, as described in AAGS's "Hospitality Security and Access Solutions" Brochure (Exhibit 1), is shown below:

# Mobile Access

A highly advanced mobile phone-based keyless entry solution, Mobile Access has already been installed in tens of thousands of guestrooms worldwide.



## Better Guest Experience

By improving service levels and the guest experience, Mobile Access builds customer loyalty as well as the hotel's image and brand. Such a central feature adds value to hotel's mobile strategies, making them more relevant to a hotel's customers.

## How It Works?



**1** Download the application.

**2** Make the reservation.

**3** Check into the room.

**4** Bypass frontdesk upon arrival and go to the room.

**5** Open door with the use of mobile application / mobile key.

10 | Mobile Access



12.     The AAGS 2023 Buying Guide further discusses AAGS's mobile key access technology. *See* Ex. 2. As this guide explains, Plaintiff's technology "allows hotel guests to . . . unlock[] the door with their mobile device via the mobile key. *Id*. at 2. "[This] solution works by generating an encrypted digital key that is transmitted to users' smart devices and safely stored in

5

a key vault on a mobile app. When presented to the appropriate door lock, the app then transmits digital key information over a secure communication channel, ensuring that only authorized users are able to gain access." *Id.*

13.     On information and belief, Liberty, either directly or through affiliated entities such as Liberty Plugins, Inc. and Urban Intel, Inc. began acquiring a family of related patents generally directed towards accessing or unlocking doors using a smart phone application in 2010, more than 25 years after AAGS first pioneered preceding technologies. Nonetheless, Liberty has asserted its patents against innovators like AAGS, including in this District.

### THE PATENTS

14.     On information and belief, Liberty and/or its affiliates Liberty PlugIns, Inc. and/or Urban Intel, Inc. are the owners, assignees, and/or exclusive licensees of a family of patents all stemming from U.S. Provisional Pat. Appl. No. 61/309,813, which was filed on March 2, 2010. This family of patents is collectively referred to herein as the "Liberty Access Control Patent Portfolio." Liberty has represented that it is the "exclusive licensee" of the Patents at issue in this case, and that Liberty has "all rights to recover for all past, present, and future infringement, including past damages." Ex. 3, ¶ 4. Moreover, Liberty has represented that it "possesses *all substantial rights*" to the Patents. Ex. 4 at 8 (Liberty's emphasis).

15.     On May 23, 2018, Liberty asserted two patents in the Liberty Access Control Patent Portfolio—the '205 and '258 patents—against Hilton Worldwide Holdings Inc., 1 Park Hotels & Resorts Inc., and Park Intermediate Holdings LLC (collectively "Hilton") in this District in Case No. 1:18-cv-03627. The case was dismissed with prejudice on January 23, 2019.

16.     On August 18, 2022, Liberty asserted three patents in the Liberty Access Control Patent Portfolio —the '205, '747, and '474 patents—against Marriott International, Inc.

("Marriott") in the Eastern District of Texas in Case No. 2:22-cv-00318. Marriott is a customer of AAGS.

17.     On December 30, 2022, Liberty asserted the same three patents asserted against Marriott——the '205, '747, and '474 patents—against Swedish entities ASSA ABLOY AB, ASSA ABLOY Mobile Services AB, and ASSA ABLOY Global Solutions AB (collectively, the "Swedish ASSA ABLOY Entities") in the Eastern District of Texas in Case No. 2:22-cv-00507

18.     Liberty asserted the '205 patent against Hilton in this District, which is the same '205 patent Liberty now asserts against Marriott and the Swedish ASSA ABLOY Entities. Moreover, the '205, '747, and '474 patents are all entitled "ACCESS CONTROL SYSTEM

AND METHOD FOR USE BY AN ACCESS DEVICE," and all share a common specification, priority date, and inventors.

19.     The following chart shows the relationship between the patents Liberty has asserted against Hilton, Marriott, the Swedish ASSA ABLOY Entities:



20.     The '205 Patent bears the title "ACCESS CONTROL SYSTEM AND METHOD FOR USE BY AN ACCESS DEVICE," and states that it issued on June 21, 2016. The '205 Patent identifies Chris Outwater and William Gibbens Redmann as its inventors. A copy of the '205 Patent is attached as Exhibit 5.

21.     The '205 Patent lists "Liberty PlugIns, Inc." as the assignee. The United States Patent and Trademark Office Assignment Database contains a record of an assignment of the '205 Patent from Liberty PlugIns, Inc. to Urban Intel, Inc. executed February 13, 2020, and recorded March 31, 2021, at Reel/frame 055881/0376.

22.     Defendant has represented that it is the exclusive licensee of the '205 Patent with all rights to recover for all past, present, and future infringement, including past damages. *See, e.g.*, Ex. 3, ¶ 4. Ex. 4 at 8.

23.     The '205 Patent issued with 24 claims. Claims 1 and 13 are both independent claims.

24.     The '205 patent generally describes a smart phone or terminal to activate a door lock using a web site or server. The '205 patent further states that an access device, including a processor and communication module, is able to control a door lock and receives a reservation certificate presented by the terminal through the communication module. Ex. 5, Abstract. The reservation can be for a particular time window. *Id.*, 2:41-5. The reservation certificate includes data of the reservation, and can be encrypted. *Id.*, 8:59-62.

25.     Further, the claims of the '205 patent were amended during reexamination so that the data of the reservation includes the interval of the reservation. Ex. 5, Amended Claims 1, 13. In the amended claims, the access device, upon receiving the interval of the reservation, compares the interval to a current time to determine that the current time is within the interval of the reservation. *Id.* The access device can allow unlocking the door if the current time is within the interval of the reservation. *Id.*

26.     The '747 Patent bears the title "ACCESS CONTROL SYSTEM AND METHOD FOR USE BY AN ACCESS DEVICE," and states that it issued on May 19, 2020. The '747 Patent identifies Chris Outwater and William Gibbens Redmann as its inventors. A copy of the '747 Patent is attached as Exhibit 6.

27.     The '747 Patent lists "Liberty PlugIns, Inc." as the assignee. The United States Patent and Trademark Office Assignment Database contains a record of an assignment of the

'747 Patent from Liberty PlugIns, Inc. to Urban Intel, Inc. executed April 19, 2019, and recorded March 31, 2021, at Reel/frame 055881/0376.

28.     Defendant has represented that it is the exclusive licensee of the '747 Patent with all rights to recover for all past, present, and future infringement, including past damages. *See, e.g.*, Ex. 3, ¶ 4. Ex. 4 at 8.

29.     The '747 Patent issued with 14 claims. Claims 1 and 13 are both independent claims.

30.     The '747 Patent is generally directed towards requesting a reservation through a first device by providing a reservation interval and selecting a location at a destination. The reservation request relates to generating a reservation certificate containing the reservation interval and a communication setting to activate a door lock controlled by an access device. The reservation certificate is passed to an application on a second device (distinct from the first device) which transmits to the certificate to the access device to unlock. *See* Ex. 6, Claims 1 and 13.

31.     The '474 Patent bears the title "ACCESS CONTROL SYSTEM AND METHOD FOR USE BY AN ACCESS DEVICE," and states that it issued on June 28, 2022. The '474 Patent identifies Chris Outwater and William Gibbens Redmann as its inventors. A copy of the '474 Patent is attached as Exhibit 7.

32.     The '474 Patent lists "Urban Intel, Inc." as the assignee.

33.     Defendant has represented that it is the exclusive licensee of the '474 Patent with all rights to recover for all past, present, and future infringement, including past damages. *See, e.g.*, Ex. 3, ¶ 4. Ex. 4 at 8.

34.     The '474 Patent issued with 36 claims. Claims 1, 8, 15, and 26 are independent claims.

35.     The '474 Patent is generally directed towards determining access by comparing a reservation interval to a current time in a mobile device, and enabling access to a location based if the reservation interval corresponds to the current time. For example, the '474 Patent describes an application on a mobile device or a processor receiving a reservation certificate containing a reservation interval and a communication setting. The application or a processor, for example, then compares the reservation interval to the current time, and if the reservation certificate corresponds to the current time, the application or processor activates the door lock. *See* Ex. 7, Claims 1, 8, 15, and 26.

**DEFENDANT'S LAWSUITS AGAINST ENTITIES RELATED TO PLAINTIFF AND PLAINTIFF'S CUSTOMER**

36.     On August 18, 2022, Liberty asserted three patents in the Liberty Access Control Patent Portfolio—the '205, '747, and '474 patents—against Marriott International, Inc. ("Marriott") in the Eastern District of Texas in Case No. 2:22-cv-00318. Marriott is a customer of AAGS. Liberty accuses Marriott of infringing the '205, '747, and '474 patents based on the Marriott Bonvoy® Mobile Application and its "Mobile Key" feature. A copy of Liberty's complaint against Marriott is attached as Exhibit 8.

37.     On December 30, 2022, Defendant filed a complaint in the United States District Court for the Eastern District of Texas (Civil Action No. 2:22-cv-00507) (the "ASSA ABLOY EDTX Case") alleging infringement of the Patents by ASSA ABLOY AB, ASSA ABLOY Mobile Services AB, and ASSA ABLOY Global Solutions AB, all Swedish entities. A copy of Liberty's complaint against the Swedish ASSA ABLOY Entities attached as Exhibit 3 and is

referred to herein as the "ASSA ABLOY Complaint." Defendant pled its case collectively against Plaintiffs. *See, e.g.*, Ex. 3, ¶ 20.

38.     ASSA ABLOY AB and ASSA ABLOY Global Solutions AB do not perform any acts alleged in the ASSA ABLOY EDTX Case to constitute infringement in the United States. ASSA ABLOY Mobile Services AB is no longer in existence, though it also did not perform any acts alleged in the ASSA ABLOY EDTX Case to constitute infringement in the United States while it existed. Thus, Defendant's allegations of infringement in the EDTX are misdirected. Instead, in the United States, those acts alleged to constitute infringement are performed by Plaintiff (to the extent they are performed). Thus, while Plaintiff specifically denies any act of infringement or that Plaintiff performs any acts specifically alleged in the ASSA ABLOY EDTX Case, Plaintiff understands Defendant's allegations to be properly directed at Plaintiff.

39.     Defendant alleges in its ASSA ABLOY Complaint that it "is the exclusive licensee of the [Patents] with all rights to recover for all past, present, and future infringement, including past damages." *See* Ex. 3, ¶ 4.

40.     Defendant's allegations of infringement of the Patents are based on the Swedish ASSA ABLOY Entities' alleged ownership, operation, advertising, control of, sale, importation, offer for sale, and/or instructions for use of "products and services, including, but not limited to, the ASSA ABLOY Global Solutions Mobile Access Software Development Kit (SDK), the ASSA ABLOY Global Solutions Mobile Access App, ASSA ABLOY Mobile Services, SESON technology, VingCard Classic Electronic Locks, VingCard Essence Electronic Locks, Visionline, and Vostio Access Management." *See* Ex. 3, ¶ 20.

41.     Defendant's infringement allegations are premised on certain brochures and videos, which Defendant alleges show the operation of Plaintiff's products and services. *See, e.g.*, Ex. 3, ¶¶ 20-25.

42.     Defendant generally alleges that the Swedish ASSA ABLOY Entities "own, operate, advertise, control, sell, import, and/or offer for sale, and instruct their subsidiaries, affiliates, and end users to use the hardware, software, and functionality that allows users to use their Mobile Access features as a key to a hotel room." *See* Ex. 3, ¶ 20.

43.     Defendant alleges that the Swedish ASSA ABLOY Entities' products and services "have infringed one or more claims of the '205 patent" and that "[the Swedish ASSA ABLOY Entities] have directly infringed, either literally or under the doctrine of equivalents, at least claim 5 of the '205 patent." *See, e.g.*, Ex. 3, ¶¶ 32, 33.

44.     Defendant also alleges that the Swedish ASSA ABLOY Entities' products and services "have infringed and continue to infringe one or more claims of the '747 patent" and that "[the Swedish ASSA ABLOY Entities] have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '747 patent." *See, e.g.*, Ex. 3, ¶¶ 52, 53.

45.     Defendant also alleges that the Swedish ASSA ABLOY Entities' products and services "have infringed and continue to infringe one or more claims of the '474 patent" and that "[the Swedish ASSA ABLOY Entities] have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents at least claim 1 of the '474 patent." *See, e.g.*, Ex. 3, ¶¶ 72, 73.

46.     Plaintiff has used, sold, or offered for sale at least one product and/or service accused by Defendant in the ASSA ABLOY EDTX Case of infringing the Patents within the

statute of limitations for patent infringement, and continues to do so. Additionally, Plaintiff has sold products and/or services to its customer, Marriott, that Defendant has accused of infringing the Patents in the Eastern District of Texas in Case No. 2:22-cv-00318, and continues to do so. Therefore, while Plaintiff specifically denies any act of infringement, Plaintiff has a reasonable apprehension that Defendant may file another action against Plaintiff and allege that Plaintiff has infringed or is infringing the Patents.

47.     Plaintiff's accused products and services do not infringe and have not infringed, either directly, indirectly, or under the doctrine of equivalents, any claim of the Patents. In view of Defendant's allegations that (1) the Swedish ASSA ABLOY Entities' products and services (which are provided in the United States by Plaintiff) infringe the Patents; and (2) Plaintiff's customer's activities in the United States infringe the Patents, a substantial controversy exists between the parties which is of sufficient immediacy and reality to warrant declaratory relief.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment of Non-Infringement of the '205 Patent)

48.     Plaintiff realleges and incorporates paragraphs 1 to 47 as if fully set forth herein.

49.     An actual controversy exists with respect to the '205 Patent due at least to Defendant's assertion that the Swedish ASSA ABLOY Entities and Plaintiff's customer infringe one or more claims of the '205 Patent through their ownership, operation, advertising, control of, sale, importation, offer for sale, and/or instructions for use of products and services related to mobile key-based hotel-room door unlocking. As Plaintiff, not the Swedish ASSA ABLOY Entities, performs these alleged acts in the United States (to the extent any are performed), Plaintiff understands Defendant's allegations in the ASSA ABLOY EDTX Case to be properly directed at Plaintiff and its products. Plaintiff specifically denies any act of infringement, and

Defendant's wrongful assertion of the '205 Patent against Plaintiff's products and services has caused and will continue to cause Plaintiff irreparable injury and damage.

50.     On information and belief, Defendant's infringement allegations are premised on public disclosures, such as brochures and videos, which Defendant alleges show the operation of Plaintiff's products and services. *See, e.g.*, Ex. 3, ¶¶ 20-25.

51.     On information and belief, Plaintiff's allegedly infringing products and services do not include "[a] processor . . . configured to receive a reservation certificate (5) presented by a portable terminal," as required by claims 1-12 of the '205 Patent.

52.     On information and belief, Plaintiff's allegedly infringing products and services do not include a processor configured to receive a reservation certificate under a proper construction of that term, but rather receive a mobile key, and at least on this basis, cannot infringe claims 1-12 of the '205 Patent.

53.     On information and belief, Plaintiff's allegedly infringing products and services do not use "a current reservation certificate that comprises an interval of a reservation [that] is presented by the portable terminal," as required by claims 1-12 of the '205 Patent.

54.     On information and belief, Plaintiff's allegedly infringing products and services generate and transmit a mobile key, which may be transmitted to a door lock, but without "a current reservation certificate that comprises an interval of a reservation," and at least on this basis, cannot infringe claims 1-12 of the '205 Patent.

55.     On information and belief, Plaintiff's allegedly infringing products and services do not include "[a] processor . . . configured to compare the interval of the reservation of the current reservation certificate to a current time accessible to the processor [and] determine the

current time is within the interval of the reservation," as required by claims 1-12 of the '205 Patent.

56.     On information and belief, Plaintiff's allegedly infringing products and services generate and transmit a mobile key, and the mobile key can be provided to a door lock, which can decrypt the key and unlock a door. The door lock, however, does not include a processor that compares an interval to a current time or determine that a current time is within an interval. At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 1-12 of the '205 Patent.

57.     On information and belief, Plaintiff's allegedly infringing products and services do not include "[a] processor . . . configured to determine the current time is within the interval of the reservation by determining if the current time is within a start time of the interval of the reservation of the current reservation certificate," as required by claim 2 of the '205 Patent.

58.     On information and belief, Plaintiff's allegedly infringing products and services generate and transmit a mobile key, and the mobile key can be provided to a door lock, which can decrypt the key and unlock a door, as described in AAGS's Buying Guide (Ex. 2 at 2) (highlighting added):

# What is Mobile Key & Keyless Entry?



Sponsored by **ASSA ABLOY**
Global Solutions

A Mobile Key is a digitally encrypted "key" that resides on a mobile device, smartphone, tablet or wearable, allowing the authorized user to gain access to secured doors or other physical or digital access points within a property. The advancement of digital keys within the hospitality industry has turned keyless entry from a growing trend into a mainstream hotel amenity. This innovative solution allows hotel guests to check in and access their assigned guestroom immediately upon arrival, unlocking the door with their mobile device via the mobile key and thus eliminating the need to visit the front desk. The solution works by generating an encrypted digital key that is transmitted to users' smart devices and safely stored in a key vault on a mobile app. When presented to the appropriate door lock, the app then transmits digital key information over a secure communication channel, ensuring that only authorized users are able to gain access.

The door lock, however, does not include a processor that is "configured to determine the current time is within the interval of the reservation," let alone a processor that is configured to do so "by determining if the current time is within a start time of the interval of the reservation of the current reservation certificate." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claim 2 of the '205 Patent.

59.     On information and belief, Plaintiff's allegedly infringing products and services do not include "[a] reservation of the current reservation certificate [that] comprises a start time and a duration," as required by claim 4 of the '205 Patent.

17

60.     On information and belief, Plaintiff's allegedly infringing products and services generate and transmit a mobile key that does not include "a start time and a duration," but is rather encrypted and ready for decryption by a door lock. *See* Ex. 2 at 2. At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claim 4 of the '205 Patent.

61.     On information and belief, Plaintiff's allegedly infringing products and services do not include or use "a current reservation certificate that comprises an interval" that "comprises a start time and an end time," as required by claim 6 of the '205 Patent.

62.     On information and belief, and as discussed above, Plaintiff's mobile key does not include "a current reservation certificate that comprises an interval" and therefore Plaintiff's mobile key also does not include an interval that "comprises a start time and an end time." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claim 6 of the '205 Patent.

63.     On information and belief, Plaintiff's allegedly infringing products and services do not "accept[], by a processor through a communication module, a reservation certificate," as required by claims 13-24 of the '205 Patent.

64.     On information and belief, Plaintiff's allegedly infringing products and services do not accept a reservation certificate under a proper construction of that term, but rather generate and transmit a mobile key to a smartphone, *see* Ex. 2 at 2, and at least on this basis, cannot infringe claims 13-24 of the '205 Patent.

65.     On information and belief, Plaintiff's allegedly infringing products and services do not "accept[], by a processor through a communication module, a reservation certificate that comprises an interval of a reservation presented with a portable terminal," as required by claims 13-24 of the '205 Patent.

66.     On information and belief, Plaintiff's allegedly infringing products and services generate and transmit an encrypted mobile key to a smartphone, which can transmit the mobile key to a door lock. The mobile key, however, does not "comprise[] an interval of a reservation," but is rather encrypted and ready for decryption by a door lock. *See* Ex. 2 at 2. At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 13-24 of the '205 Patent.

67.     On information and belief, Plaintiff's allegedly infringing products and services do not include "determining, by [a] processor, that the reservation certificate presented by the portable terminal is current by comparing the interval of the reservation to a current time accessible to the processor and determining that the current time is within the interval of the reservation" as required by claims 13-24 of the '205 Patent.

68.     On information and belief, Plaintiff's allegedly infringing products and services generate a mobile key, which is provided to a smartphone that provides the mobile key to a door lock, which decrypts the key and unlocks a door. *See* Ex. 2 at 2. This, however, does not include a processor comparing an interval to a current time or determining that a current time is within the interval. At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 13-24 of the '205 Patent.

69.     On information and belief, Plaintiff's allegedly infringing products and services do not include "determining that the current time is within the interval of the reservation [by] determining that the current time is within a start time of the interval of the reservation and a predetermined duration," as required by claim 14 of the '205 Patent.

70.     On information and belief, Plaintiff's allegedly infringing products and services generate a mobile key, which is provided to a smartphone that provides the mobile key to a door

lock, which decrypts the key and unlocks a door. *See* Ex. 2 at 2. This, however, does not include a processor "determining that the current time is within the interval of the reservation," let alone "determining that the current time is within a start time of the interval of the reservation and a predetermined duration." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claim 14 of the '205 Patent.

71.     On information and belief, Plaintiff's allegedly infringing products and services do not include "[a] reservation of the reservation certificate [that] further comprises a start time and a duration," as required by claim 16 of the '205 Patent.

72.     On information and belief, Plaintiff's allegedly infringing products and services generate and transmit a mobile key that does not include "a start time and a duration," but is rather encrypted and ready for decryption by a door lock. *See* Ex. 2 at 2. At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claim 16 of the '205 Patent.

73.     On information and belief, Plaintiff's allegedly infringing products and services do not include or use "a current reservation certificate that comprises an interval," where the interval "comprises a start time and an end time," as required by claim 18 of the '205 Patent.

74.     On information and belief, and as discussed above, Plaintiff's mobile key does not include "a reservation certificate that comprises an interval" and therefore Plaintiff's mobile key also does not include an interval that "comprises a start time and an end time." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claim 18 of the '205 Patent.

75.     On information and belief, Plaintiff's allegedly infringing products and services related to mobile key-based door unlocking cannot infringe claim 1 or claim 13 of the '205 Patent because they do not "receive a reservation certificate" or "accept[] . . . by a processor

20

through a communication module, a reservation certificate," as required under a proper construction of "reservation certificate" due to the nature of Plaintiff's mobile key.

76.     On information and belief, Plaintiff's allegedly infringing products and services related to mobile key-based door unlocking cannot infringe claim 1 or claim 13 of the '205 Patent because they do not compare the interval of a reservation to a current time.

77.     Because Plaintiff's allegedly infringing products and services related to mobile key-based door unlocking do not meet each and every limitation of independent claims 1 and 13 of the '205 Patent, Plaintiff's allegedly infringing products and services do not infringe directly or indirectly any claim of the '205 Patent, either literally or under the doctrine of equivalents.

78.     Moreover, on information and belief, Plaintiff's allegedly infringing products and services related to mobile key-based door unlocking cannot infringe the dependent claims of the '205 Patent further because they do not meet each and every limitation of these claims for the additional reasons discussed above.

79.     Plaintiff's use, sale, or offer for sale of products and services related to mobile key-based door unlocking does not infringe, directly or indirectly, any claim of the '205 Patent, either literally or under the doctrine of equivalents.

80.     In view of the foregoing, Plaintiff seeks and is entitled to declaratory judgment that the use, sale, and offer for sale of Plaintiff's products and services related to mobile key-based door unlocking do not infringe any claim of the '205 Patent. A judicial determination of the respective rights of the parties with respect to noninfringement of the claims of the '205 Patent is necessary and appropriate under 28 U.S.C. § 2201 to resolve the parties' dispute regarding alleged infringement of the '205 Patent.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment of Non-Infringement of the '747 Patent)

81.     Plaintiffs reallege and incorporate paragraphs 1 to 47 as if fully set forth herein.

82.     An actual controversy exists with respect to the '747 Patent due at least to Defendant's assertion that the Swedish ASSA ABLOY Entities and Plaintiff's customer infringe one or more claims of the '747 Patent through their ownership, operation, advertising, control of, sale, importation, offer for sale, and/or instructions for use of products and services related to mobile key-based hotel-room door unlocking. As Plaintiff, not the Swedish ASSA ABLOY Entities, performs these alleged acts in the United States (to the extent any are performed), Plaintiff understands Defendant's allegations in the ASSA ABLOY EDTX Case to be properly directed at Plaintiff and its products. Plaintiff specifically denies any act of infringement, and Defendant's wrongful assertion of the '747 Patent against Plaintiff's products and services has caused and will continue to cause Plaintiffs irreparable injury and damage.

83.     On information and belief, Defendant's infringement allegations are premised on public disclosures, such as brochures and videos, which Defendant alleges show the operation of Plaintiff's products and services. *See, e.g.*, Ex. 3, ¶¶ 20-25.

84.     On information and belief, Plaintiff's allegedly infringing products and services do not include "a reservation server to . . . issue a reservation certificate describing the interval of [a] reservation based on [a] reservation request and [a] selected location," as required by claims 1-12 of the '747 Patent.

85.     On information and belief, Plaintiff's allegedly infringing products and services include a service that receives a request to issue a key from a hotel property management system and issues a mobile key, but the mobile key that is issued does not describe "[an] interval of [a] reservation based on [a] reservation request and [a] selected location."

22

86. On information and belief, Plaintiff's allegedly infringing products and services do not include "a reservation server to . . . transmit, via [a] network, from the reservation server to a second device distinct from [a] first device, [a] reservation certificate," where the reservation certificate "describ[es] [an] interval of the reservation based on the reservation request and the selected location," as required by claims 1-12 of the '747 Patent.

87. On information and belief, Plaintiff's allegedly infringing products and services include a service that delivers a mobile key to an assigned phone, but the mobile key is not, and does not include, a "reservation certificate" under a proper construction of that term, let alone a "reservation certificate" that "describ[es] the interval of the reservation based on the reservation request and the selected location." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 1-12 of the '747 Patent.

88. On information and belief, Plaintiff's allegedly infringing products and services do not include "an application installed on [a] second device to receive [a] reservation certificate" that "describ[es] the interval of the reservation based on the reservation request and the selected location," as required by claims 1-12 of the '747 Patent.

89. On information and belief, an application on a smartphone using Plaintiff's technology may receive a mobile key from Plaintiff's mobile service, but the mobile key is not, and does not include, a "reservation certificate" that describes a reservation or location under a proper construction of "reservation certificate," let alone a "reservation certificate" that "describ[es] the interval of the reservation based on the reservation request and the selected location." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 1-12 of the '747 Patent.

90.     On information and belief, Plaintiff's allegedly infringing products and services do not include "[a] processor [that] activates the door lock based on at least the receipt of the reservation certificate" that "describ[es] the interval of the reservation based on the reservation request and the selected location," as required by claims 1-12 of the '747 Patent.

91.     On information and belief, the door locks that operate using Plaintiff's allegedly infringing products and services receive Plaintiff's mobile key from a smartphone and subsequently unlock, but do not activate "based on at least . . . receipt of [a] reservation certificate" that "describ[es] the interval of the reservation based on the reservation request and the selected location." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 1-12 of the '747 Patent.

92.     On information and belief, Plaintiff's allegedly infringing products and services do not include "[an] application installed on [a] second device [that] decrypts the encrypted portion of [a] reservation certificate," as required by claim 5 of the '747 Patent.

93.     On information and belief, Plaintiff's allegedly infringing products and services include a service that transmits an encrypted mobile key to a smartphone, which forwards the encrypted key to a door lock, which may decrypt the key. *See* Ex. 2 at 2. The door lock, however, cannot be considered "the second device" having the application installed, because "the application" also "wirelessly transmits the reservation certificate to the access device," according to the requirements of claim 1, from which claim 5 depends. Door locks used in conjunction with Plaintiff's allegedly infringing products and services do not both decrypt a key and "transmit[] [a] reservation certificate to [an] access device." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claim 5 of the '747 Patent.

94. On information and belief, Plaintiff's allegedly infringing products and services do not include "[a] reservation certificate [that] automatically expires at the end of the interval of the reservation," as required by claim 7 of the '747 Patent.

95. On information and belief, Plaintiff's mobile key is generated and delivered to a smartphone, which can use it to unlock a door, *see* Ex. 2 at 2. But Plaintiff's mobile key is not, and does not include, a "reservation certificate," under a correct construction of that term, let alone a "reservation certificate" that automatically expires at the end of a reservation interval. At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claim 7 of the '747 Patent.

96. On information and belief, Plaintiff's allegedly infringing products and services do not include "a reservation server to . . . issue a reservation certificate, the reservation certificate describing an interval of the reservation for [a] room based on [a] reservation request," as required by claims 13 and 14 of the '747 Patent.

97. On information and belief, Plaintiff's allegedly infringing products and services include a service that receives a request to issue a key from a hotel property management system and issues a mobile key, but the mobile key that is issued does not describe "an interval of the reservation for [a] room based on [a] reservation request." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 13 and 14 of the '747 Patent.

98. On information and belief, Plaintiff's allegedly infringing products and services include a service that transmits an encrypted mobile key, but do not include "a reservation server to . . . transmit, via [a] network, from the reservation server to an application installed on a smartphone, [a] reservation certificate," where the reservation certificate "describ[es] an interval

of the reservation for the room based on the reservation request," as required by claims 13 and 14 of the '747 Patent.

99. On information and belief, Plaintiff's allegedly infringing products and services include a service that delivers a mobile key to a phone, *see* Ex. 2 at 2, but the mobile key is not, and does not include, a "reservation certificate" under a proper construction of that term, let alone a "reservation certificate" that "describ[es] an interval of the reservation for the room based on the reservation request." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 13 and 14 of the '747 Patent.

100. On information and belief, Plaintiff's allegedly infringing products and services do not include "a smartphone application installed on the smartphone to receive the reservation certificate" that "describ[es] an interval of the reservation for [a] room based on [a] reservation request," as required by claims 13 and 14 of the '747 Patent.

101. On information and belief, an app on a smartphone using Plaintiff's technology may receive a mobile key, but the mobile key is not, and does not include, a "reservation certificate" under a proper construction of that term, let alone a "reservation certificate" that "describ[es] an interval of the reservation for [a] room based on [a] reservation request." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 13 and 14 of the '747 Patent.

102. On information and belief, Plaintiff's allegedly infringing products and services do not include "[a] processor [that] activates the door lock based on at least the receipt of the reservation certificate" that "describ[es] an interval of the reservation for the room based on the reservation request," as required by claims 13 and 14 of the '747 Patent.

26

103.    On information and belief, the door locks that operate using Plaintiff's allegedly infringing products and services receive Plaintiff's mobile key from a smartphone and subsequently unlock, but do not activate "based on at least . . . receipt of [a] reservation certificate" that "describ[es] an interval of the reservation for the room based on the reservation request." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 13 and 14 of the '747 Patent.

104.    Because Plaintiff's allegedly infringing products and services related to mobile key-based door unlocking do not meet each and every limitation of independent claims 1 and 13 of the '747 Patent, Plaintiff's allegedly infringing products and services do not infringe directly or indirectly any claim of the '747 Patent, either literally or under the doctrine of equivalents.

105.    Moreover, on information and belief, Plaintiff's allegedly infringing products and services related to mobile key-based door unlocking cannot infringe any claims of the '747 Patent further because they do not meet each and every limitation of these claims for the additional reasons discussed above.

106.    Plaintiff's use, sale, or offer for sale of products and services related to mobile key-based door unlocking does not infringe, directly or indirectly, any claim of the '747 Patent, either literally or under the doctrine of equivalents.

107.    In view of the foregoing, Plaintiff seeks and is entitled to declaratory judgment that the use, sale, and offer for sale of Plaintiff's products and services related to mobile key-based door unlocking do not infringe any claim of the '747 Patent. A judicial determination of the respective rights of the parties with respect to noninfringement of the claims of the '747 Patent is necessary and appropriate under 28 U.S.C. § 2201 to resolve the parties' dispute regarding alleged infringement of the '747 Patent.

27

## THIRD CAUSE OF ACTION
### (Declaratory Judgment of Non-Infringement of the '474 Patent)

108.     Plaintiffs reallege and incorporate paragraphs 1 to 47 as if fully set forth herein.

109.     An actual controversy exists with respect to the '474 Patent due at least to Defendant's assertion that the Swedish ASSA ABLOY Entities and Plaintiff's customer infringe one or more claims of the '474 Patent through their ownership, operation, advertising, control of, sale, importation, offer for sale, and/or instructions for use of products and services related to mobile key-based hotel-room door unlocking. As Plaintiff, not the Swedish ASSA ABLOY Entities, perform these alleged acts in the United States, Plaintiff understands Defendant's allegations in the ASSA ABLOY EDTX Case to be properly directed at Plaintiff and its products. Plaintiff specifically denies any act of infringement, and Defendant's wrongful assertion of the '474 Patent against Plaintiff's products and services has caused and will continue to cause Plaintiff irreparable injury and damage.

110.     On information and belief, Defendant's infringement allegations are premised on public disclosures, such as brochures and videos, which Defendant alleges show the operation of Plaintiff's products and services. *See, e.g.*, Ex. 3, ¶¶ 20-25.

111.     On information and belief, Plaintiff's allegedly infringing products and services do not include "a server . . . to further provide a reservation certificate to the application, the reservation certificate comprising an interval of a reservation," as required by claims 1-7 of the '474 Patent.

112.     On information and belief, and as discussed above, Plaintiff's allegedly infringing products and services include a service that delivers a mobile key to a phone, *see* Ex. 2 at 2, but the mobile key is not, and does not include, a "reservation certificate" under a proper construction of that term, let alone a "reservation certificate" that "compris[es] an interval of a

reservation." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 1-7 of the '474 Patent.

113.    On information and belief, Plaintiff's allegedly infringing products and services do not include "[an] application [that] compares the interval of the reservation to a current time accessible to the application to determine if the reservation certificate is current," as required by claims 1-7 of the '474 Patent.

114.    On information and belief, and as discussed above, Plaintiff's allegedly infringing products and services generate and transmit a mobile key, and the mobile key can be provided to a door lock, which can decrypt the key and unlock a door. *See* Ex. 2 at 2. Plaintiff's allegedly infringing products and services, however, do not use an application that compares an interval of a reservation to a current time. At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 1-7 of the '474 Patent.

115.    On information and belief, Plaintiff's allegedly infringing products and services do not include "[an] application activat[ing] the door lock by communicating with the access device via the communication setting when the application determines that the reservation certificate is current," as required by claims 1-7 of the '474 Patent.

116.    On information and belief, because Plaintiff's allegedly infringing products and services do not include "[an] application [that] compares the interval of the reservation to a current time accessible to the application to determine if the reservation certificate is current," Plaintiff's allegedly infringing products and services therefore do not activate a door lock by communicating with an access device "when the application determines that the reservation certificate is current." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 1-7 of the '474 Patent.

117.    On information and belief, Plaintiff's allegedly infringing products and services do not include "[an] application [that] notifies the user of proximity to the access device," as required by claim 3 of the '474 Patent.

118.    On information and belief, smartphones that run applications that use Plaintiff's allegedly infringing products and services communicate with a door lock using Bluetooth®, but these applications do not provide any notification of proximity to an access device. At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claim 3 of the '474 Patent.

119.    On information and belief, Plaintiff's allegedly infringing products and services do not include "[an] application [that] uses Wi-Fi to communicate with the access device," as required by claim 6 of the '474 Patent.

120.    On information and belief, smartphones that run applications that use Plaintiff's allegedly infringing products and services communicate with a door lock using Bluetooth® or Zigbee, but not Wi-Fi. At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claim 6 of the '474 Patent

121.    On information and belief, Plaintiff's allegedly infringing products and services do not include "a server to provide a communication setting to the application," where "the communication setting comprises a network SSID," as required by claim 6 of the '474 Patent.

122.    On information and belief, Plaintiff's allegedly infringing products and services include a service that generates and transmits a digital key to a smartphone, but not a "communication setting," under proper construction of that term, let alone a communication setting that "comprises a network SSID." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claim 6 of the '474 Patent.

123.     On information and belief, Plaintiff's allegedly infringing products and services do not include "a server to provide . . . a reservation certificate to the application . . . the reservation certificate comprising an interval of a reservation," as required by claims 8-14 of the '474 Patent.

124.     On information and belief, and as discussed above, Plaintiff's allegedly infringing products and services include a service that delivers a mobile key to a phone, *see* Ex. at 2, but the mobile key is not, and does not include, a "reservation certificate" under a proper construction of that term, let alone a reservation certificate that "compris[es] an interval of a reservation." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 8-14 of the '474 Patent.

125.     On information and belief, Plaintiff's allegedly infringing products and services do not include "[a] processor [that] compares the interval of the reservation to a current time accessible to the processor to determine if the reservation certificate is current," as required by claims 8-14 of the '474 Patent.

126.     On information and belief, and as discussed above, Plaintiff's allegedly infringing products and services use a mobile key generated by Plaintiff's service, where the mobile key is provided to a door lock, which decrypts the key and unlocks a door. *See* Ex. 2 at 2. Plaintiff's allegedly infringing products and services, however, do not use a processor that compares an interval of a reservation to a current time. At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 8-14 of the '474 Patent.

127.     On information and belief, Plaintiff's allegedly infringing products and services do not include "[a] processor activat[ing] the door lock when the processor determines that the reservation certificate is current," as required by claims 8-14 of the '474 Patent.

128.    On information and belief, because Plaintiff's allegedly infringing products and services do not include "[a] processor [that] compares the interval of the reservation to a current time accessible to the processor to determine if the reservation certificate is current," Plaintiff's allegedly infringing products and services therefore do not include a processor that activates a door lock when it "determines that the reservation certificate is current." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 8-14 of the '474 Patent.

129.    On information and belief, Plaintiff's allegedly infringing products and services do not include "[an] application [that] notifies the user of proximity to the access device," as required by claim 10 of the '474 Patent.

130.    On information and belief, smartphones that run applications that use Plaintiff's allegedly infringing products and services communicate with a door lock using Bluetooth®, but these applications do not provide any notification of proximity to an access device. At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claim 10 of the '474 Patent.

131.    On information and belief, Plaintiff's allegedly infringing products and services do not include "[an] application [that] uses Wi-Fi to communicate with the access device," as required by claim 13 of the '474 Patent.

132.    On information and belief, smartphones that run applications that use Plaintiff's allegedly infringing products and services communicate with a door lock using Bluetooth® or Zigbee, but not Wi-Fi. At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claim 13 of the '474 Patent.

133. On information and belief, Plaintiff's allegedly infringing products and services do not include "a server to provide a communication setting . . . to the application," where "the communication setting comprises a network SSID," as required by claim 13 of the '474 Patent.

134. On information and belief, Plaintiff's allegedly infringing products and services include a service that generates and transmits a digital key to a smartphone, but not a "communication setting," under proper construction of that term, let alone a "communication setting" that "comprises a network SSID." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claim 13 of the '474 Patent.

135. On information and belief, Plaintiff's allegedly infringing products and services do not include "a server . . . to further provide . . . a reservation certificate to the application, the reservation certificate comprising an interval of a reservation," as required by claims 15-25 of the '474 Patent.

136. On information and belief, and as discussed above, Plaintiff's allegedly infringing products and services include a service that delivers a mobile key to a phone, *see* Ex. 2 at 2, but the mobile key is not, and does not include, a "reservation certificate" under a proper construction of that term, let alone a "reservation certificate" that "compris[es] an interval of a reservation." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 15-25 of the '474 Patent.

137. On information and belief, Plaintiff's allegedly infringing products and services do not include "[an] application [that] compares the interval of the reservation to a current time accessible to the application to determine if the reservation certificate is current," as required by claims 15-25 of the '474 Patent.

138.    On information and belief, and as discussed above, Plaintiff's allegedly infringing products and services use a mobile key generated by Plaintiff's service, where the mobile key is provided to a door lock, which decrypts the key and unlocks a door. *See* Ex. 2 at 2. Plaintiff's allegedly infringing products and services, however, do not use an application that compares an interval of a reservation to a current time. At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 15-25 of the '474 Patent.

139.    On information and belief, Plaintiff's allegedly infringing products and services do not include "[an] application activat[ing] the door lock by communicating with the access device . . . based on use by the application of the communication setting, when the application determines that the reservation certificate is current," as required by claims 15-25 of the '474 Patent.

140.    On information and belief, because Plaintiff's allegedly infringing products and services do not include "[an] application [that] compares the interval of the reservation to a current time accessible to the application to determine if the reservation certificate is current," Plaintiff's allegedly infringing products and services therefore do not activate a door lock by communicating with an access device "when the application determines that the reservation certificate is current," and at least on this basis, cannot infringe claims 15-25 of the '474 Patent.

141.    On information and belief, Plaintiff's allegedly infringing products and services do not include "[an] application [that] activates the door lock by communicating with the access device via a second communication protocol," where the "second communication protocol comprises a wireless LAN protocol," as required by claim 21 of the '474 Patent.

142.    On information and belief, smartphones that run applications that use Plaintiff's allegedly infringing products and services communicate with a door lock using Bluetooth® or

Zigbee, which are not wireless LAN protocols. At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claim 21 of the '474 Patent.

143.    On information and belief, Plaintiff's allegedly infringing products and services do not include "[an] application [that] activates the door lock by communicating with the access device via a second communication protocol," where the "second communication protocol comprises a wireless LAN protocol" that "comprises Wi-Fi," as required by claim 22 of the '474 Patent.

144.    On information and belief, and as discussed above, smartphones that run applications that use Plaintiff's allegedly infringing products and services communicate with a door lock using Bluetooth® or Zigbee, but not Wi-Fi. At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claim 22 of the '474 Patent.

145.    On information and belief, Plaintiff's allegedly infringing products and services do not include "a server to provide . . . a reservation certificate to the application, the reservation certificate comprising an interval of a reservation," as required by claims 26-36 of the '474 Patent.

146.    On information and belief, and as discussed above, Plaintiff's allegedly infringing products and services include a service that delivers a mobile key to a phone, *see* Ex. 2 at 2, but the mobile key is not, and does not include, a "reservation certificate" under a proper construction of that term, let alone a "reservation certificate" that "compris[es] an interval of a reservation." At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 26-36 of the '474 Patent.

147.    On information and belief, Plaintiff's allegedly infringing products and services do not include "[a] processor [that] compares the interval of the reservation to a current time

accessible to the processor to determine if the reservation certificate is current," as required by claims 26-36 of the '474 Patent.

148.    On information and belief, and as discussed above, Plaintiff's allegedly infringing products and services use a mobile key generated by Plaintiff's service, where the mobile key is provided to a door lock, which decrypts the key and unlocks a door. *See* Ex. 2 at 2. Plaintiff's allegedly infringing products and services, however, do not use a processor that compares an interval of a reservation to a current time to determine if a reservation certificate is current. At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claims 26-36 of the '474 Patent.

149.    On information and belief, Plaintiff's allegedly infringing products and services do not include "[a] processor [that] activates the door lock when the processor determines that the reservation certificate is current," as required by claims 26-36 of the '474 Patent.

150.    On information and belief, because Plaintiff's allegedly infringing products and services do not include "[a] processor [that] compares the interval of the reservation to a current time accessible to the processor to determine if the reservation certificate is current," Plaintiff's allegedly infringing products and services therefore do not activate a door lock by communicating with an access device "when the processor determines that the reservation certificate is current," and at least on this basis, cannot infringe claims 26-36 of the '474 Patent.

151.    On information and belief, Plaintiff's allegedly infringing products and services do not include "[a] processor [that] receives the reservation certificate from the application via a second communication protocol," where the "second communication protocol comprises a wireless LAN protocol," as required by claim 32 of the '474 Patent.

36

152.     On information and belief, smartphones that run applications that use Plaintiff's allegedly infringing products and services communicate with a door lock using Bluetooth® or Zigbee, which are not wireless LAN protocols. At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claim 32 of the '474 Patent.

153.     On information and belief, Plaintiff's allegedly infringing products and services do not include "[a] processor [that] receives the reservation certificate from the application via a second communication protocol," where the "second communication protocol comprises a wireless LAN protocol" that "comprises Wi-Fi," as required by claim 33 of the '474 Patent.

154.     On information and belief, and as discussed above, smartphones that run an application that uses Plaintiff's allegedly infringing products and services communicate with a door lock using Bluetooth® or Zigbee. but not Wi-Fi. At least on this basis, Plaintiff's allegedly infringing products and services cannot infringe claim 33 of the '474 Patent.

155.     Because Plaintiff's allegedly infringing products and services related to mobile key-based door unlocking do not meet each and every limitation of independent claims 1, 8, 15, and 26 of the '474 Patent, Plaintiff's allegedly infringing products and services do not infringe directly or indirectly any claim of the '474 Patent, either literally or under the doctrine of equivalents.

156.     Moreover, on information and belief, Plaintiff's allegedly infringing products and services related to mobile key-based door unlocking cannot infringe the dependent claims of the '474 Patent further because they do not meet each and every limitation of these claims for the additional reasons discussed above.

157.     Plaintiff's use, sale, or offer for sale of products and services related to mobile key-based door unlocking does not infringe, directly or indirectly, any claim of the '474 Patent, either literally or under the doctrine of equivalents.

158.     In view of the foregoing, Plaintiff seeks and is entitled to declaratory judgment that the use, sale, and offer for sale of Plaintiff's products and services related to mobile key-based door unlocking do not infringe any claim of the '474 Patent. A judicial determination of the respective rights of the parties with respect to noninfringement of the claims of the '474 Patent is necessary and appropriate under 28 U.S.C. § 2201 to resolve the parties' dispute regarding alleged infringement of the '474 Patent.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

A.     Declaratory judgment that Plaintiff's use, sale, offer for sale, and/or importation of products and services related to mobile key-based hotel door unlocking, does not infringe the '205 Patent directly, indirectly, or under the doctrine of equivalents;

B.     Preliminary and permanent injunctive relief restraining Defendant and its agents, servants, employees, successors and assigns, and all others in concert and privity with them from wrongfully asserting the '205 Patent against Plaintiff's products and services;

C.     Declaratory judgment that Plaintiff's use, sale, offer for sale, and/or importation of products and services related to mobile key-based hotel door unlocking, does not infringe the '747 Patent directly, indirectly, or under the doctrine of equivalents;

D.     Preliminary and permanent injunctive relief restraining Defendant and its agents, servants, employees, successors and assigns, and all others in concert and privity with them from wrongfully asserting the '747 Patent against Plaintiff's products and services;

E.      Declaratory judgment that Plaintiff's use, sale, offer for sale, and/or importation of products and services related to mobile key-based hotel door unlocking, does not infringe the '474 Patent directly, indirectly, or under the doctrine of equivalents;

F.      Preliminary and permanent injunctive relief restraining Defendant and its agents, servants, employees, successors and assigns, and all others in concert and privity with them from wrongfully asserting the '474 Patent against Plaintiff's products and services;

G.      A declaration that this action is an exceptional case under 35 U.S.C. § 285;

H.      An award to Plaintiff of attorneys' fees and costs incurred in this Action; and

I.      A grant of such other and further relief as this Court deems just and proper.


**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated:  February 7, 2023

Respectfully submitted,

*/s/Lionel M. Lavenue*
Lionel M. Lavenue
Virginia Bar No. 49,005
lionel.lavenue@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, VA 20190
Phone:  (571) 203-2700
Fax:     (202) 408-4400

**ATTORNEY FOR PLAINTIFF
ASSA ABLOY Global Solutions, Inc.**